# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR S. PEREZ, | 1:10-cv-01471-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Docs. 1, 13, 16) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Title II and Title XVI, respectively, of the Social Security Act (the "Act"). 42 U.S.C. § 405(g); 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 9, 10.) On August 16, 2010, the action was randomly assigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

## II.  BACKGROUND

**A.  Factual Background**

Plaintiff was born on April 16, 1965, and previously worked as a laborer in construction. (Administrative Record ("AR") 35, 33.) Plaintiff has obtained the equivalent of a General Education Development certificate, but has had no further education or training, speaks Spanish as his first language, and speaks very little English. (AR 39.) Plaintiff filed applications for DIB and SSI on December 19, 2006, which were denied; he reapplied for DIB and SSI on November 7, 2007. (AR 186-90, 191-93.) Plaintiff alleges that he became unable to work on June 12, 2004. (AR 206, 211.)

Plaintiff asserts that his inability to work is due to a back injury that occurred sometime in 2003, and his back was re-injured in 2004. (AR 45-46.) Plaintiff also suffers from diabetes and glaucoma. (AR 48.)  On November 16, 2006, Plaintiff underwent a laminotomy surgery and nerve root decompression at L3-4 and L4-5. (AR 390-91.) On January 5, 2007, Plaintiff completed a pain questionnaire and reported that he could do household chores, rake leaves, wash dishes, drive, and shop, but could not carry heavy objects. (AR 249-51.)

On July 17, 2007, Plaintiff failed to appear for a scheduled appointment at Sequoia Community Health Centers. (AR 507.) On July 19, 2007, Plaintiff was seen by Dr. Alan Sanders for a complex orthopaedic examination and report. (AR 454-67.) The purpose was to re-evaluate Plaintiff's condition because he had undergone surgery since his last visit. (AR 463.) Dr. Sanders noted that Plaintiff had care and therapy following his surgery, to which he had responded well. (AR 463.) Plaintiff reported that he was much better and that he no longer had numbness, tingling, or radiating pain in his leg. (AR 455.) Plaintiff, however, continued to have pain in his back upon bending, stooping, and lifting. (AR 455.) He also experienced discomfort and pain in his back generally, with pain shooting occasionally to his buttocks or thighs. (AR 455.) Dr. Sanders opined that Plaintiff "should be limited on a prophylactic basis to light work." (AR 463.)

On September 11, 2007, Plaintiff failed to appear for another scheduled appointment at Sequoia Community Health Centers (AR 506), but did return for a follow-up appointment on November 12, 2007 (AR 505). On December 31, 2007, Plaintiff completed an exertional daily activities questionnaire and reported that he did yard work, shopped, and drove. (AR 277-79.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's applications initially and again on reconsideration. (AR 110-14, 116-19.) Consequently, on July 28, 2009, Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ") was granted (AR 176-80), and a hearing was held on October 7, 2009, before ALJ Stephen W. Webster. (AR 30-54.) Plaintiff and a Vocational Expert ("VE") testified. (AR 30-54.)

**1.     Plaintiff's Testimony**

Plaintiff testified that he was born on April 16, 1965. (AR 35.) He drives a vehicle, but only for short periods and cannot go over bumps because of pain in his back. (AR 37.) He is able to perform his personal grooming, but sometimes needs his wife to help him put on his socks. (AR 37-38.) His wife does all the cooking and laundry, but he helps clean around the house when he can. (AR 38.) He reads and writes in Spanish, but only speaks some English. (AR 39.) He has not worked since June 12, 2004. (AR 39.)

Plaintiff testified that he has pain due to back injuries, and he has diabetes. (AR 41.) He goes to Sierra Vista, a medical clinic, for treatment approximately once a month, when his medications run out. (AR 41-42.) He also receives treatment for some emotional problems at the same clinic. (AR 41-42.) He receives medicine for glaucoma, chest pain, back problems, and diabetes. (AR 42.) The medications help somewhat with his pain, and he has used a girdle to alleviate the pain. (AR 42-43.)

The ALJ observed that, during the hearing, Plaintiff was sitting on the edge of his chair and leaning against the edge of the table. Plaintiff testified that this was to support himself and that it did hurt a little. (AR 43.) He stated that it does not generally hurt him to sit, but he has to be careful and can only sit for one or two hours or less. (AR 43.) He can sit for 15 to 20 minutes at one time, stand for 45 to 60 minutes, walk for approximately three to four blocks, and lift approximately 10 to 15 pounds. (AR 44-45.)

Plaintiff testified that his surgery in 2006 alleviated pain and numbness in his right leg. (AR 46.) He believes his ability to work is limited because he can only perform any particular activity for one to two hours. (AR 47.) He lies on his side for approximately an hour to rest his back and

alleviate the pain once every three days. (AR 47-48.) His diabetes affects his vision and he cannot see small letters because they are blurred. (AR 49.) At times, he misses reaching for small objects as a result. (AR 49.)

### 2. Vocational Expert's Testimony

The VE testified that a person of Plaintiff's age, education, and work experience who could lift 20 pounds occasionally and 10 pounds frequently; stand or sit about six hours in an eight-hour workday; and occasionally stoop, crouch, crawl, and kneel could not perform Plaintiff's past relevant work. (AR 50.) However, jobs in the national or regional economy existed that a hypothetical person with these limitations, at the sedentary[2] and light[3] unskilled level, could perform, including bagger, garment sorter, and grader. (AR 50-51.) Given these limitations, there would be 45,460 jobs as a bagger, 21,731 jobs as a garment sort, and 20,715 jobs as a grader. (AR 50-51.) The VE stated that there would be nine times the number of jobs available in the national economy. (AR 51.)

The VE testified that a second hypothetical person of Plaintiff's age, education, and work experience who could lift ten pounds occasionally; stand or sit at will; and occasionally stoop, crouch, crawl, and kneel could not perform Plaintiff's past relevant work. (AR 51.) However, jobs in the national or regional economy existed that a hypothetical person with these limitations, at the sedentary unskilled level, could perform, including ampule sealer, loader of semi-conductor dyes, and stuffer. (AR 51-52.) Given these limitations, there would be 3,135 jobs as an ampule sealer, 2,790 jobs as a loader of semi-conductor dyes, and 612 jobs as a stuffer. (AR 51-52.)

### 3. ALJ's Decision

On December 10, 2009, the ALJ issued a decision finding Plaintiff not disabled from July 18, 2007, through the date of the decision. (AR 20-29.) The ALJ found that Plaintiff (1) meets the insured status requirements of the Social Security Act; (2) has not engaged in substantial gainful activity since June 12, 2004; (3) has severe impairments consisting of chronic residuals from

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a).

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

laminectomy and decompression surgery at L3-4 and L4-5 of the spine; (4) does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (5) has a Residual Functional Capacity ("RFC")[4] which allows him to perform sedentary work available in the national economy. (AR 20-29.)

Plaintiff sought review of this decision before the Appeals Council on February 19, 2010. (AR 9.) The Appeals Council denied Plaintiff's request on June 24, 2010. (AR 1-3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**C.     Plaintiff's Contentions on Appeal**

In his opening brief, Plaintiff asserts that the ALJ erred in finding him not disabled from July 18, 2007, by failing to address the issue of borderline age and improperly rejecting Plaintiff's testimony. (Doc. 13, at 6-25.)

### III.  SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.   APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  *Id.* §§ 404.1520(f), 416.920(f).  If not, in the Fifth Step, the burden shifts to the

Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V.   DISCUSSION

**A.   The ALJ's Consideration of Plaintiff's Borderline Age**

The ALJ found Plaintiff to be in the "younger individual" age category, i.e., age 18 to 44. (AR 25, 28.) Plaintiff argues that, at the time of the ALJ's decision, he was only five months short of his 45th birthday. As such, Plaintiff was of a "borderline age" and the ALJ should have considered whether to place Plaintiff into the next age category for purposes of the disability decision. (Doc. 13, at 9-18.) The Commissioner contends that the ALJ sufficiently considered the borderline age issue. (Commissioner's Reply Brief (Doc. 16), at 11-14.)

As the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") recently explained, social security regulations divide claimants into three age categories: (1) younger persons (those persons under age 50)[5]; (2) persons closely approaching advanced age (those persons age 50-54), and (3) persons of advanced age (those persons age 55 or older). *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1069 (9th Cir. 2010); 20 C.F.R. § 404.1563(c), (d), (e). "Where a claimant is within a few days or a few months of reaching an older age category (a 'borderline situation'), an ALJ has discretion, but is not required, to use the older age category." *Lockwood*, 616 F.3d at 1069; 20 C.F.R. § 404.1563(b). Title 20 of the Code of Federal Regulations, section 404.1563(b), states the following with regard to the ALJ's consideration of a claimant's age category:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors on your case.

20 C.F.R. § 404.1563(b).

---

[5] The regulation also provides that "in some circumstances, we will consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45." 20 C.F.R. § 404.1563(c).

7

In *Lockwood*, the claimant, Lockwood, applied for disability which was denied by the ALJ, and the district court affirmed. 616 F.3d at 1070-71. On appeal to the Ninth Circuit, the claimant argued that the ALJ failed to consider, pursuant to § 404.1563(b), whether she should be placed in an older age category for purposes of the disability decision. *Id.* at 1071-72. The court determined that the ALJ satisfactorily considered whether to use an older age category. *Id.* at 1072. The court reasoned that the ALJ's decision set forth the date of the claimant's birth and stated that she was 54 years old and thus closely approaching advanced age on the date of the ALJ's decision. *Id.* The court determined that recitation of the claimant's birthday was an indication that the ALJ was aware that Lockwood was "just shy of her 55th birthday." *Id.* Further, the court explained that the ALJ cited 20 C.F.R. § 404.1563, which prohibits mechanical application of the age categories in borderline situations, indicating that the ALJ acknowledged and applied the proper legal standard. *Id.* Finally, the court determined that the ALJ did not apply the age categories mechanically because the ALJ evaluated the overall impact of the factors of the case and relied on the testimony of a vocational expert before finding the claimant to be not disabled. *Id.* The court held that this was sufficient consideration by the ALJ of the borderline age issue as the regulation "does not impose any obligation [on the ALJ] to make express findings incorporated into the ALJ's opinion." *Id.* at 1073.

Here, like *Lockwood,* the ALJ noted Plaintiff's date of birth (April 16, 1965), Plaintiff's age as of the alleged disability onset date (i.e., 39 years old), Plaintiff's age category during the period in dispute (i.e., younger individual age 18 to 44), cited 20 C.F.R. § 404.1563 in the decision, and evaluated all the factors of Plaintiff's case when the ALJ relied on the VE testimony to reach a disability decision. (AR 25, 28.) Plaintiff asserts that he was less than five months short of age 45 at the time of the ALJ's decision (Doc. 13, at 11:6-9), which should entitle him to a borderline age determination and, thus, a different age category (Doc. 13, at 11:8). In *Lockwood*, however, the claimant was one month and three days short of being classified into a different age category at the time of the ALJ decision, and the court held that it was still within the ALJ's discretion to make the determination. Thus, there is no bright-line rule as to when an older age category should be applied in borderline situations.

Plaintiff also asserts that *Lockwood* is distinguishable because here the ALJ incorrectly determined that Plaintiff was 39 years old rather than almost 45 at the time of the ALJ's decision. This is an incorrect characterization of the ALJ's findings. The ALJ determined that Plaintiff was 39 years old on the date that he claimed to be disabled; the ALJ did not find that Plaintiff was 39 years old on the date of the ALJ's decision. (AR 25.) Thus, the ALJ did not make an incorrect determination with regard to Plaintiff's age. Rather, the ALJ clearly indicated Plaintiff's correct birth date – April 16, 1965 – in his decision.

Plaintiff also asserts that *Lockwood* is not controlling because it was incorrectly decided. Specifically, Plaintiff asserts that the *Lockwood* court did not give proper deference to the language of the Program Operating Manual System ("POMS") in interpreting § 404.1563. (Doc. 13, 10:11-17 ("*Lockwood* applied the *Skidmore* persuasiveness respect standard, not *Auer* deference to the explanation of the regulation which always controls unless plainly erroneous or inconsistent with the regulation.").)[6] This argument has no merit. The Ninth Circuit's decision in *Lockwood* – as with every published Ninth Circuit decision – is binding on this Court, regardless of whether Plaintiff believes it was incorrectly decided.

In sum, the Ninth Circuit's decision in *Lockwood* is controlling, and the facts of this case are not distinct from those of *Lockwood* such that a different outcome is required. Like *Lockwood*, Plaintiff was only a few months short of an older age category at the time of the ALJ's decision. The ALJ properly set forth Plaintiff's birth date in his decision, cited and acknowledged § 404.1563, and relied on the testimony of a VE indicating that the ALJ did not mechanically apply the age categories. This was sufficient consideration of Plaintiff's borderline age pursuant to § 404.1563 and

---

[6] Plaintiff argues that agency deference defined in *Auer v. Robbins*, 519 U.S. 452 (1997), controls and should allow for POMS DI 25015.005 to govern. (AR 10-15.) "But *Auer* deference is warranted only when the language of the regulation is ambiguous." *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000); *see also Bassiri v. Xerox Corp.*, 463 F.3d 927, 930-31 (9th Cir. 2006). In *Lockwood*, the Ninth Circuit held that the language of 20 C.F.R. § 404.1563(b) is not ambiguous; therefore, *Auer* does not apply. *Lockwood*, 616 F.3d at 1071-72 ("It is clear from the text of this regulation that an ALJ is not *required* to use an older age category, even if the claimant is within a few days or a few months of reaching an older age category.") (emphasis in original).

1   the Ninth Circuit's holding in *Lockwood*. *See Lockwood*, 616 F.3d at 1071-72. For these reasons,
2   the ALJ properly considered Plaintiff's borderline age in compliance with 20 C.F.R. § 404.1563.

3   **B.     Plaintiff's Credibility**

4         Plaintiff asserts that the ALJ failed to set forth clear and convincing reasons for finding him
5   not entirely credible. In evaluating the credibility of a claimant's testimony regarding subjective
6   pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
7   2009). First, the ALJ must determine whether the claimant has presented objective medical evidence
8   of an underlying impairment that could reasonably be expected to produce the pain or other
9   symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably
10  be expected to cause the severity of the symptom she has alleged; she need only show that it could
11  reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).
12  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject
13  the claimant's testimony about the severity of the symptoms by setting forth "specific, clear and
14  convincing reasons" for the rejection. *Id.*

15        Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably
16  be expected to produce the alleged symptoms. (AR 26-27.) Therefore, absent affirmative evidence
17  of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing.
18  *Vasquez*, 572 F.3d at 1036. On the second prong of the credibility determination, the ALJ found
19  Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were
20  not entirely credible for the disputed period between July 18, 2007, and December 10, 2009. (AR
21  27.) The Plaintiff testified at the hearing that his back pain prevents him from sitting longer than
22  15 to 20 minutes, and after that amount of time he must stand up; he can stand for approximately 45
23  minutes to an hour. (AR 43-44.) Plaintiff also testified that he can walk approximately three to four
24  city blocks, but this results in throbbing pain. (AR 44.)

25        In considering and rejecting this testimony, the ALJ stated the following:

> After considering the evidence of record, I find that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible beginning on July 18,

2007. The claimant cancelled or failed to show up for doctor appointments on a number of occasions (Exhibit 13F [AR 506-07]). Dr. Alan Sanders prophylactically limited the claimant to light work in July 2007 (Exhibit 11F, p. 11 [AR 463]). The claimant underwent a laminotomy and nerve root decompression, had follow-up care and therapy, and had done well and had been released (Exhibit 11F, p. 11 [AR 463]). In January 2007, the claimant reported that he could do household chores, rake leaves, do dishes, drive, and shop, but could not carry heavy objects (Exhibit 3E [AR 149-51]). In December 2007, the claimant reported that he shopped, did yard work, and drove (Exhibit 9F [AR 440-50].)

(AR 27.)

### 1. The ALJ is Permitted to Partially Credit Plaintiff's Testimony

Plaintiff first argues that it is incongruent for the ALJ to accept some of Plaintiff's testimony, but reject other portions of it. (Doc. 13, 19:3-7 ("Despite finding that Mr. Perez was credible in describing his symptoms up until July 17, 2007, the ALJ deemed Mr. Perez' testimony not credible to support his claim for disability one day later as of July 18, 2007 . . . In other words, the passage of one evening turned Mr. Perez from a credible witness to a not credible witness.").)

An ALJ is entitled to reject particular portions of a claimant's testimony while crediting others. So long as the ALJ offers clear and convincing reasons for rejecting any select portions of the claimant's testimony, the ALJ need not credit or discredit a claimant's testimony wholesale. Thus, the issue here is whether the ALJ offered clear and convincing reasons for discounting the portion of Plaintiff's testimony that related to his limitations due to back pain since July 2007.

### 2. Rationale For Rejecting Plaintiff's Credibility Is Not Clear and Convincing

#### a. Daily Activities

The ALJ found that Plaintiff's daily activities are inconsistent with Plaintiff's testimony regarding the extent of his limitations. Inconsistency between the level of activity reported by a claimant and a claimant's alleged limitations is a factor that bears on credibility. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ noted that in January 2007 Plaintiff reported he could perform certain household chores, rake leaves, wash dishes, drive, and shop, but could not carry heavy objects. (AR 27.) The ALJ then noted that in December 2007, Plaintiff reported that he shopped, performed yard work, and drove a car. (AR 27.)

In citing these two reports of Plaintiff's daily activities, it is unclear how they indicate that Plaintiff was not credible. At the time of Plaintiff's January 2007 testimony regarding his daily activities, the ALJ determined that Plaintiff was disabled and credited Plaintiff's testimony as it related to his symptoms prior to July 17, 2007. (*See* AR 26 ("The claimant was under a disability, as defined by the Social Security Act, from June 12, 2004, through July 17, 2007."); AR 25 ("From June 12, 2004, through July 17, 2007, the claimant's statements concerning the limiting effects of his symptoms are generally credible.").) Apparently, Plaintiff's reported activities in January 2007 were not viewed by the ALJ as incompatible or inconsistent with Plaintiff's testimony about his symptoms and limitations prior to July 2007. However, when Plaintiff reported nearly identical daily activities in December 2007 – approximately 12 months later – the ALJ determined these activities were inconsistent with Plaintiff's alleged pain and limitations. It is unclear how the daily activities reported in January and December 2007 detracted from Plaintiff's credibility subsequent to July 17, 2007.

Additionally, the ALJ's recitation of Plaintiff's daily activities provides no discussion as to how these daily activities undercut Plaintiff's lay statements regarding the extent of his symptoms subsequent to June 2007. *See Reddick*, 157 F.3d at 722 (an ability to take part in some household tasks bears on a claimant's credibility only to the extent that the level of activity is in fact inconsistent with the alleged limitations). Further, the ALJ made no finding that Plaintiff is capable of performing these activities repeatedly or for substantial periods of time without rest, and did not explain how these activities are transferable to the workplace. *See Fair*, 885 F.2d at 603. Plaintiff's reported daily activities do not present a clear and convincing reason, absent any further discussion, to discount Plaintiff's lay statements regarding the extent of his pain and limitations.

**b.     Cancelled or Missed Appointments**

The ALJ also reasoned that Plaintiff was less credible regarding the extent of his reported limitations because he "cancelled or failed to show up for doctor appointments on a number of occasions." (AR 27.) Plaintiff correctly notes that the missed appointments to which the ALJ cited only comprise two missed appointments. Plaintiff was noted as a "no show" on July 17, 2007, and September 11, 2007. (AR 506-07.) Plaintiff, however, continued to seek medical care at the time

these appointments were missed, and followed up after the appointments were missed. Specifically, Plaintiff appeared for examination on July 19, 2007, September 18, 2007 (AR 486-87), and November 12, 2007 (AR 505). The limited nature of the cancellations and Plaintiff's continued medical treatment during this time period does not support an inference that Plaintiff was exaggerating his pain and limitations. Rather, the missed or cancelled appointments appear to be minimal and indicate instead scheduling conflicts rather than apathy motivated by a lack of pain or need for medical care.

### c.    Conservative Treatment

The Commissioner asserts that the ALJ determined that Plaintiff was less credible "due to his conservative treatments." (Doc. 16, 9:12-13.) This, however, was not a line of reasoning articulated or even suggested by the ALJ. While the Commissioner notes Plaintiff's hearing testimony where he conceded that he visited the clinic just once a month to refill prescription medication and his only treatment was the medication and a back brace, these facts were not noted or discussed by the ALJ as reasons for finding Plaintiff not entirely credible. The Court is not permitted to affirm an ALJ's credibility decision based on evidence that the ALJ did not discuss. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("reviewing court can evaluate an agency's decision only on the grounds articulated by the agency").

### d.    Inconsistency with Medical Evidence

Plaintiff asserts that the ALJ erred in rejecting Plaintiff's testimony because it was based solely on the lack of objective medical evidence. (Doc. 13, at 22:19-24:14.) While the lack of objective medical evidence cannot provide the sole rationale for rejecting a claimant's credibility, the absence of objective medical evidence to support a claimant's subjective complaints of pain is a factor that may be considered in conjunction with factors. *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits *solely* because the degree of pain alleged by the claimant is not supported by objective medical evidence") (emphasis added); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("because a claimant need not present clinical or diagnostic evidence to support

the severity of his pain . . . a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (while medical evidence alone cannot discredit testimony as to pain, it is one factor which the ALJ is permitted to consider).  Thus, to be legally sufficient, a lack of objective medical evidence to corroborate Plaintiff's allegations of pain and limitation must be accompanied by other reasons to discount Plaintiff's lay testimony.

However, it does not appear that the ALJ discounted Plaintiff's testimony based on the absence of objective medical evidence corroborating Plaintiff's pain.  Rather, the ALJ noted the examination report from Dr. Sanders where Plaintiff reported pain and limitation that was somewhat inconsistent with Plaintiff's hearing testimony.  In other words, it could be inferred from the ALJ's decision that the ALJ determined that Plaintiff's statements to Dr. Sanders indicated less debilitating symptoms than those he testified to before the agency.  In July 2007, Plaintiff reported that he had done very well following his surgery and that he was much better. (AR 455.)  He no longer had numbness, tingling, or radiating pain to his leg.  (AR 455.)  He did report, however, that he still experienced pain in his back upon bending, stooping, and lifting, and generally continued to experience some discomfort and pain in his back.  Plaintiff also indicated that the pain would occasionally shoot to his buttocks or thighs. (AR 455.)  At the hearing, Plaintiff asserted that his lower-back pain prevented him from sitting longer than 15 to 20 minutes at one time, he could only stand for approximately 45 minutes, and could only lift between 12 to 15 pounds. (AR 43-44.)  Plaintiff stated that the onset of pain in his lower-back is unpredictable, and he has to lie down approximately one-third of the day to relieve his lower-back pain. (AR 48.)

While an ALJ's determination that a claimant's complaints are inconsistent with clinical observations can satisfy the clear and convincing requirement, *Regennitter v. Comm'r of Soc. Sec. Admin*., 166 F.3d 1294, 1297 (9th Cir. 1998), the lack of temporal proximity between Plaintiff's reported symptoms to Dr. Sanders and Plaintiff's hearing testimony does not strongly indicate an inconsistency between the two statements.  Plaintiff's statements to Dr. Sanders were made in July 2007, only a few months after surgery.  Plaintiff's hearing statements regarding his pain and limitations were made in October 2009.  The statements are hardly inconsistent if Plaintiff continued

to experience pain and the pain became worse over the two years between Dr. Sander's examination report and Plaintiff's hearing testimony.

Moreover, it is difficult to infer from the ALJ's decision that a perceived inconsistency between the statements comprised the underlying rationale for discrediting Plaintiff. In discussing Plaintiff's credibility, the ALJ noted only that Dr. Sanders had prophylactically limited the claimant to light work in July 2007, and that Plaintiff had done well following surgery. (AR 27.) There was no discussion of this medical evidence or what the ALJ interpreted it as tending to show. Dr. Sander's report appears to be probative for the proposition that Plaintiff experienced some symptom relief in the immediate months following his surgery, but indicates very little, if anything, about Plaintiff's pain or limitations in the two years following that examination. Thus, the ALJ's citation to this medical evidence, without more, does not provide clear and convincing reasons to discount Plaintiff's credibility.

In sum, the ALJ failed to provide clear and convincing reasons to discount Plaintiff's credibility. The noted medical evidence is not necessarily inconsistent with Plaintiff's statements and, to the extent it represents a lack of objective medical evidence to corroborate Plaintiff's pain and subjective limitations, this alone is not sufficient to discredit Plaintiff. Plaintiff's self-reported daily activities were noted by the ALJ, but there was no explanation how these daily activities were inconsistent with Plaintiff's statements of his limitations or were transferable to a work setting. Finally, two missed medical appointments in July 2007, standing alone, do not create a clear and convincing inference that Plaintiff was exaggerating his limitations.

**C.    Remand Is Required**

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of

benefits, reversal [and an award of benefits] is appropriate." *Id.* (alteration in original) (internal quotation marks omitted).

The Court has concluded that the ALJ erred in failing to give specific, clear, and convincing reasons for rejecting Plaintiff's testimony. In these circumstances, it is appropriate to remand this matter for further administrative proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Cf. Benecke*, 379 F.3d at 593; *Harman*, 211 F.3d at 1178. Here, remand is appropriate because the ALJ must properly address Plaintiff's credibility before a proper disability determination can be made. *See Vasquez*, 572 F.3d at 593.

### VI.  CONCLUSION

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Salvador S. Perez and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   January 4, 2012**              /s/ Sheila K. Oberto
                                                    UNITED STATES MAGISTRATE JUDGE